Colcock, J.
By the act (after the public notice) the authority to discharge is given either to the judge or the commissioner of special bail, and as the clerk could not leave the court while it was in session, it is not perceived that there was either impropriety or illegality in the course pursued by the presiding judge. On the contrary, as the liberty of the citizen was x-estrained, it was highly proper that the judge should hear the application. The jurisdiction was concurrent and the application could not well have been refused.
On the second ground the court ai'e unanimously of opinion that the plaintiff cannot succeed. The seventh clause of the act enumerates the causes which shall prevent ihe discharge of the pi'isoner. First, his not giving in a schedule within the forty days, nor shall he be discharged *440 without fully satisfying the action or execution on which fie is confined, if since his confinement and before security given he -has been seen without the prison walls, without being legally authorized to do so, or shall have spent more than 2s. and 6d. per day; or if confined on account of wilful mayhem or wilful and malicious tresspass, or for voluntary or permissive waste, or damages done to the freehold, orshali have within three months before his confinement, or at any time since, paid or assigned his estate or any part thereof to one creditor in preference to another, or fraudulently soldr conveyed or assigned his estate to defraud his creditors.
In the seventh clause, speaking of the preference which it is Intended to prevent, the words are “ an undue preference to one creditor to the prejudice of the plaintiff.”
it is then clear both from the letter and spirit of the act that it was never intended that the mere payment of a sum of money to a creditor should prevent the discharge of an unfortunate debtor. The payment of the money must be accompanied with a purpose of preferring one to the injury of another. Suppose a man to be in debt and to have executions against him of which he is not informed, he is making use of the best means in his power to pay off his debts and as soon as he procures a small sum pays it to a creditor who like himself may be in distress, and soon after he is apprehended by one of his creditors, can it be imagined that for such an act he is to loose his liberty?. Again, suppose he contracts a small debt for those necessaries which are indispensi-ble to support his family, and a few days before his. arrest or even on the very morning of it he discharges such a debts ' shall he be subjected to so severe a penalty? I apprehend not. To give to the act such a construction would be to place an unfortunate man, against whom, there was a judgmental a worse situation than if he were in actual confinement; for he could not venture to make a payment lest he should be • immediately laid hold of and imprisoned for life.
*441 The preamble of the act states that, “Whereas humanity requires that the confinement of persons on civil process should be less rigorous than it has hitherto been. Therefore it is enacted, &c.” The object was to ameliorate the condition of unfortunate debtors and not to subject them to the extreme rigor which the construction contended for would make them liable to.
The third ground complains that thé case was not submitted to a jury. The practice under the seventh clause has been, where the facts were complicated or of doubtful character, to refer them to a jury, but the judge may, when he thinks there is no necessity for the trouble and expense of a jury, decide on a case alone; and it is difficult to see what necessity there could be for a jury in a case like this. The single fact of his having paid a sum of money was not controvertible. No evidence was given to induce a belief that the money was paid with any unlawful purposes, and therefore no room for a doubt as to the fact, and the conclusion of law would under any circumstances have been for the judge. The case of Stover vs. Duren, (2 M'Cord 266,) was much relied on by the counsel for the plaintitf. But it has certainly been misunderstood. There the case was submitted to a jury and the judge who charged the jury stated that the omission to render the schedule and the preference must be both fraudulent, which it was contended induced the jury to suppose that something like moral fraud was necessary; whereas the condition of the bond is merely that he render a schedule, and the requisite of the act in the other particular, that he prefer one creditor to another; either of which prevents Lis discharge. Now he had not rendered the schedule within the time, and no reason was given for the neglect, it was, therefore, necessary that the case should go back, and the judge who delivered the opinion of the court preserves the word used in the act, “prefer}” and when he says such preference need not be fraudulent, he is to be understood as meaning that it is not necessary that it be considered as *442 morally so, speaking with reference to the ciiarge of the presiding judge in that particular cáse.
Marie for the motion.
Thompson contra.
The motion is dismissed.